UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
STEPHEN C. FLETCHER and KAREN C.
FLETCHER,

                Plaintiffs,

       -against-

THE STANDARD FIRE INSURANCE
COMPANY,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
13-cv-5463 (ADS)(AKT)

**APPEARANCES:**

**Shayne, Dachs, Corker, Sauer & Dachs, LLP**
*Attorneys for the Plaintiffs*
114 Old Country Road, Suite 410
Mineola, NY 11501
      By: Norman H. Dachs, Esq., Of Counsel

**Carter, Ledyard & Milburn, LLP**
*Attorneys for the Defendant*
Two Wall Street
New York, NY 10005
      By: Judith A. Lockhart, Esq.
          Leonardo Trivigno, Esq., Of Counsel

**Stradley Ronon Stevens & Young LLP**
*Attorneys for the Defendant*
2005 Market Street, Suite 2600
Philadelphia, PA 19103
      By: Gina M. Stowe, Esq., Of Counsel

**SPATT, District Judge**.

      On October 2, 2013, the Plaintiffs Stephen C. Fletcher and Karen C. Fletcher

(collectively, the "Plaintiffs") commenced this action pursuant to 42 U.S.C. § 4072 seeking to

recover flood-related damages to their residence from Superstorm Sandy pursuant to a Standard

1

Flood Insurance Policy issued by the Defendant Standard Fire Insurance Company (the "Defendant") under the National Flood Insurance Program.

Presently before the Court are (i) the Defendant's motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 to dismiss the Plaintiffs' claim; and (ii) the Plaintiffs' cross-motion pursuant to Fed. R. Civ. P. 56 for summary judgment on their claim. For the foregoing reasons, the Court grants the Defendant's motion and dismisses the Plaintiffs' claim.

## I. BACKGROUND

Unless stated otherwise, the following facts are drawn from the parties' Rule 56.1 statements. Triable issues of fact are noted.

The Plaintiffs are citizens of New York who owned a one-family residence located in Massapequa, New York. The parties do not make clear when the Plaintiffs purchased their home. The mortgagee of the Plaintiffs' property was CitiMortgage, Inc. ISOA ATIMA ("CityMortgage"). The parties do not make clear the meaning of "ISOA ATIMA" in their papers.

The Defendant is an insurance company authorized to do business in the State of New York. (Answer at ¶ 1.) As relevant to the instant dispute, Congress created the National Flood Insurance Program ("NFIP") by passing the National Flood Insurance Act of 1968, 42 U.S.C. § 4001, *et seq.* (Id. at ¶ 4.) The purpose of the statutes was to provide adequate flood insurance in at-risk areas by offering subsidized flood insurance. Id. at § 4001(b). On April 1, 1979, the Federal Emergency Management Agency ("FEMA") became the agency responsible for operating the NFIP. See 42 U.S.C. § 4071.

In 1983, FEMA created the Write Your Own ("WYO") Program, which gave insurance companies the ability to issue, under their own names as insurers, Standard Flood Insurance

2

Policies ("SFIPs") to individuals as "fiscal agent[s] of the Federal Government." (See Answer at ¶ 1.) In other words, the insurance companies serve as administrators for the federal program, and it is the U.S. government, not the companies, that pays the claims. McGair v. Am. Bankers Ins. Co. of Florida, 693 F.3d 94, 96 (1st Cir. 2012) (citation omitted).

WYO companies, such as the Defendant, must issue SFIPs whose terms are set by regulation and cannot be "altered, varied, or waived other than by the express written consent" of FEMA. 44 C.F.R. § 61.13.

The Defendant provided the Plaintiffs with a SFIP consistent with the FEMA regulations. 44 C.F.R. § Pt. 61, App. A(1), (2); Fletcher Aff., Ex. A. In that regard, a section of the SFIP entitled, "Policy Renewal," states: (1) "This policy will expire at 12:01 a.m. on the last day of the policy term"; and (2) "We must receive the payment of the appropriate renewal premium within 30 days of the expiration date." 44 C.F.R. § Pt. 61, App. A(1), (2); Fletcher Aff., Ex. A, at 16. The policy further states:

> 3. If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:
>
> a. If you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of non-receipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.

Id.

The Plaintiffs' SFIP became effective on September 2, 2002. (Holmes Decl., Ex. A.) Prior to September 19, 2010, CitiMortgage submitted premium payments to the Defendant on the Plaintiffs' behalf.

On July 19, 2010, the Defendant prepared a notice to the Plaintiffs. (Holmes Decl., Ex. A.) The top of the Notice states, "**Policy Expiration Date**: 9/02/2010" and "**Billing Date**: 07/19/2010." (Id.) (emphasis in original). The Notice then states, "**RENEWAL NOTICE**: Your flood insurance is about to expire on the date shown above. Please follow renewal instructions on the remittance coupon below." (Id.) (emphasis in original). The Notice further states that to renew the "CURRENT COVERAGE," the Plaintiffs are required to remit a payment of $2,686, and to obtain "INCREASED COVERAGE," they are required to remit a payment of $2,711. (Id.)

On September 1, 2010, the Defendant prepared another Notice with the same information. However, this notice stated, "**FINAL NOTICE**: Your flood insurance policy expired on the date shown above. Please disregard this notice if your payment has already been mailed." (Id.)

On September 17, 2010, the Defendant prepared a notice to CityMortgage. (Holmes Decl., Ex. A.) The notice stated, "The attached premium invoice represents a flood insurance policy that has cancelled for non-payment and which shows your institution as having interest in the listed property." (Id.) The notice further states that pursuant to Section 525 of the National Flood Insurance Reform Act:

> [I]f . . . the lender or servicer determines that the security property and any personal property securing the loan lack adequate flood insurance coverage, the lender or servicer must notify the borrower of the borrower's responsibility to obtain coverage at the borrower's expense. If the borrower fails to purchase flood insurance within 45 days after notification, the lender must purchase the insurance on the borrower's behalf. We notified both you and the borrower, on your behalf, 45 days prior to their policy's expiration and subsequently, have not received any payment.

(Id.)  Finally, the notice states, "Renewal of the above flood policy is both permitted and required under National Insurance Reform Act of 1994.  Please remit payment as soon as possible to effect coverage at the earliest possible date."  (Id.)

The Defendant assert that these notices were "automatically generated" and sent out, respectively, on July 19, 2010; September 1, 2010; and September 17, 2010.  (Holmes Decl. at ¶ 7.)  In support of this assertion, the Defendant relies on a declaration by Scott Holmes, a "Director of Technical Services" and a "custodian of records" for the Defendant.  (Id. at ¶ 2.)

The Plaintiffs did not submit a payment to the Defendant prior to September 2, 2010, or at any time thereafter.  However, the Plaintiffs deny "knowledge or information sufficient to form a belief as to whether premium payments were made by [the] mortgagee."  (The Pls.' Counterstatement of Facts at ¶ 3.)

On October 29, 2012, the Plaintiffs' residence was damaged as a result of SuperStorm Sandy.  On October 2, 2013, the Plaintiffs instituted the present action seeking $86,100 in damages under the SFIP issued by the Defendant.

## II. DISCUSSION

### A. Legal Standards

Fed. R. Civ. P. 56(a) provides that a court may grant summary judgment when the "movant shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  James River Ins. Co. v. Power Mgmt., Inc., No. 12-

CV-02706 (ADS), 2014 WL 5460548, at *4 (E.D.N.Y. Oct. 28, 2014) (Spatt, J.) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).

"If the movant successfully demonstrates that there is no genuine issue of material fact, then the burden shifts to the non-movant who must come forward with specific facts showing that a genuine issue exists." D'Iorio v. Winebow, Inc., No. 12-CV-1205 (ADS), 2014 WL 7335466, at *8 (E.D.N.Y. Dec. 26, 2014) (Spatt, J).

"A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Reeves v. Anderson, No. 11-CV-3770 SAS, 2014 WL 7336459, at *3 (S.D.N.Y. Dec. 24, 2014) (citing Windsor v. United States, 699 F.3d 169, 192 (2d Cir. 2012)). In determining if a genuine dispute of material fact exists, "the court must resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." Buckley v. Deloitte & Touche USA LLP, 888 F. Supp. 2d 404, 415 (S.D.N.Y. 2012) aff'd, 541 F. App'x 62 (2d Cir. 2013) (citation omitted).

However, a party "opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory" or "based on speculation." Id. (citations omitted). In that regard, "[w]here it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## B. As to Whether Plaintiff's Policy Expired

42 U.S.C. § 4072 provides that within one year of the date of mailing the notice of denial or partial denial of an insured's claim under the NFIP, the insured can "institute an action against the administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy."

As stated above, under the WYO Program, private insurers, such as the Defendant, can issue policies directly to individuals. 42 U.S.C. § 4081(a). By regulation, WYO companies can be sued under 42 U.S.C. § 4072 for failure to pay a claim. See Palmieri v. Allstate Ins. Co., 445 F.3d 179, 184 (2d Cir. 2006) ("Suits against the FEMA Director upon the disallowance of a claim are authorized by 42 U.S.C. § 4072, and '[b]y regulation, the WYO company [may be] sued in place of the FEMA director.'") (quoting C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 267 n.4 (3d Cir. 2004)).

Under the FEMA regulations, WYO companies, such as the Defendant, act as "fiscal agents" and not "general agents of the United States," and "therefore must strictly enforce the provisions set out in the regulations, varying the terms of a policy only with FEMA's express written consent." Jacobson v. Metro. Prop. & Cas. Ins. Co., 672 F.3d 171, 175 (2d Cir. 2012); see also 44 C.F.R. §§ 61.4(b), 61.13(d)(e), 62.23(c)–(d). Thus, in the instant case, both parties are bound by the terms and conditions of the FEMA regulations establishing the SFIP. 44 C.F.R. § Pt. 61, App. A.

In interpreting the SFIP, the Court must "strictly construe[] and enforce[]" its terms. Jacobson v. Metro. Prop. & Cas. Ins. Co., 672 F.3d 171, 175 (2d Cir. 2012) ("While we have not specifically addressed the interpretation of SFIP proof-of-loss requirements, many of our sister circuits have done so and have uniformly held that those requirements must be strictly construed and enforced . . . . We adopt the same standard here.") (citations omitted); see also Evanoff v. Standard Fire Ins. Co., 534 F.3d 516, 521 (6th Cir. 2008) ("[W]e are required to interpret the SFIP at issue strictly."); Shuford v. Fid. Nat. Prop. & Cas. Ins. Co., 508 F.3d 1337, 1343 (11th Cir. 2007) ("[S]trict compliance with the provisions of federal flood insurance policies is required because payments are drawn from the federal treasury.").

The Second Circuit reasoned that such a requirement is necessary in the SFIP context because an insured's claims, if granted, will be paid by the Department of Treasury, not a private insurance company, and thus, warrant particular deference. Jacobson., 672 F.3d at 175; see also Destefanis v. Fugate, No. CV 12-4730 (LDW), 2013 WL 6796425, at *3 (E.D.N.Y. Dec. 19, 2013) ("In Jacobson, the Second Circuit held that it was 'adopt[ing] the same standard . . . in part because there is a compelling interest in assuring uniformity of decision in cases involving the NFIP.'") (quoting Jacobson., 672 F.3d at 175).

This is so even if a strict interpretation of those requirements will create an inequitable result or hardship on the plaintiff. See id. ("The principles unique to governmental insurance policies that require a strict construction of their terms and requirements can sometimes create ostensibly inequitable results."); see also Gowland v. Aetna, 143 F.3d 951, 955 (5th Cir. 1998) ("We find that the theories of substantial

compliance, waiver, and equitable estoppel are inapplicable to the facts presented herein. While this result may seem harsh in light of the [plaintiffs'] ongoing negotiations with Aetna, we must remind that the National Flood Insurance Program is federally subsidized and enables consumers to obtain flood insurance which virtually would be impossible to purchase in the marketplace. Requiring the [plaintiffs] to turn square corners when dealing with the Treasury does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury."). (internal quotation marks and citation omitted).

Here, Section H of the SFIP states: (1) "This policy will expire at 12:01 a.m. on the last day of the policy term"; and (2) "We must receive the payment of the appropriate renewal premium within 30 days of the expiration date." 44 C.F.R. § Pt. 61, App. A(1), (2); Fletcher Aff., Ex. A, at 16. Thus, under the plain language of the policy, in order to renew coverage, the Plaintiffs were required to make a renewal premium payment within "30 days of the expiration date," September 2, 2010.

According to notices prepared by the Defendant on July 19, 2010, September 1, 2010, and September 17, 2010, the Plaintiffs' policy became effective on September 2, 2002 and expired on September 2, 2010. (Holmes Decl., Ex. A.)

The Plaintiffs admit that they did not remit a renewal premium payment to the Defendant prior to or after September 2, 2010. (See Pls.' Counterstatement of Facts at ¶ 3) ("[The] Plaintiff[s] admit[] . . . that they, personally, did not make a premium payment."). However, they suggest that CitiMortgage could have paid the premiums on their behalf: "[the] Plaintiff[s] admits only that they, personally, did not make a premium payment but den[y] knowledge or information sufficient to form a belief as to whether

9

premium payments were made by [t]he mortgagee." (Id.)  Yet they offer no evidence to support such a payment.

By contrast, the Defendant offers persuasive evidence that the Defendant did not receive a renewal premium payment from either the Plaintiff or CitiMortgage.  In particular, in a September 17, 2010 letter to CitiMortgage, the Defendant wrote: "The attached premium invoice represents a flood insurance policy that has cancelled for non-payment and which shows your institution as having interest in the listed property . . . . We notified both you and the borrower, on your behalf, 45 days prior to their policy's expiration and subsequently, have not received any payment."  (Meyer Decl., Ex. A.) (emphasis added).  Furthermore, in a declaration, Holmes, the custodian of records for the Defendant, stated "based on personal knowledge from my review of the documents maintained in the claims file of this matter" "[the] Plaintiffs did not make a premium payment on or before September 2, 2010."  (Holmes Decl. at ¶¶ 3,6.)

Based on this evidence, and the Plaintiffs' failure to produce any evidence to the contrary, the Court finds that there is no material issue of fact that the Defendant did not receive a renewal premium payment prior to or after the Plaintiffs' policy expired on September 2, 2010.  Therefore, the Court concludes that under the clear language of the SFIP, the Plaintiffs' coverage expired before their residence was damaged by SuperStorm Sandy on October 29, 2012.  Cf. Jacobson, 672 F.3d at 176 ("The principles unique to governmental insurance policies that require a strict construction of their terms and requirements can sometimes create ostensibly inequitable results."); Gowland, 143 F.3d at 954 ("As the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced, we hold that an insured's failure to provide a

complete, sworn proof of loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim.").

The Court does not find the Plaintiffs' remaining arguments to be persuasive. First, the Plaintiffs argue that the Defendant did not comply with the procedural provisions in the May 2005 Flood Insurance Manual in cancelling the SFIP. (The Pl.'s Mem. of Law at 4–5; Dachs Aff., Ex. B.) Even assuming that the 2005 Flood Insurance Manual is binding on the parties, which appears unlikely, the provisions relied on by the Plaintiffs apply solely to instances where the insured voluntarily terminates or cancels the policy: "The <u>insured</u> must sign and date the Cancellation/Nullification Request Form." (Dachs Aff., Ex. B, at 7) (emphasis added). Here, the Plaintiffs never sought to nullify or cancel their policy. Thus, these provisions have no relevance to this case.

The Plaintiffs next argue that the Defendant was required to mail the Plaintiffs notice of nonrenewal of the policy within forty-five days of the end of the policy. In support, the Plaintiffs rely on New York Insurance Law § 3425(d)(1), which provides that an insurance company must provide the insured with "written notice of its intention not to renew a covered policy" "at least forty-five but not more than sixty days in advance of the end of the policy period." N.Y. Ins. Law § 3425 (McKinney). The Plaintiffs contend that the Defendants did not provide proof that they mailed renewal notices to the Plaintiffs, and as such, the policy was not properly terminated. (The Pls.' Mem. of Law 11–16.) The Court disagrees.

In this regard, the Court finds <u>84 Albany Ave. Realty Corp. v. Standard Fire Ins. Co.</u>, No. CV 13-2930 (LDW), 2014 WL 1401404, at *3 (E.D.N.Y. Apr. 7, 2014) to be instructive. There, the court rejected an insured-plaintiff's argument that Paragraph 3 of

11

Section H of the SFIP — the provision at issue in the instant case — should not apply because the plaintiff "never received a Renewal Notice." 84 Albany Ave. Realty Corp. v. Standard Fire Ins. Co., No. CV 13-2930, 2014 WL 1401404, at *4 (E.D.N.Y. Apr. 7, 2014).

In particular, the court relied on Paragraph 3 of the SFIP, which states, "[I]f you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due of nonreceipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed." Id. at *3 (quoting 44 C.F.R. § Pt. 61, App. A(1)). The court noted that the "very language of this provision requires the insured to notify the insurance company that it has not received a renewal notice." Id. at *4. Since the plaintiff did not allege that it notified the defendant that it did not receive the renewal notice, the Court rejected the plaintiff's argument and dismissed its claim. Id.

The Court finds the reasoning of 84 Albany Ave. Realty Corp. to be directly applicable to the instant case. The Plaintiffs have not pointed to any regulation by FEMA, the National Flood Insurance Act of 1968, or the "federal common law" that requires the Defendant to mail a renewal notice within forty-five days of the expiration of the policy period. As noted in 84 Albany Ave. Realty Corp., the very language of the SFIP appears to place the obligation solely on the Plaintiffs to notify the Defendant of a failure to receive notice of renewal. 2014 WL 1401404 at *4. Since the Plaintiffs points to no evidence that they so notified the Defendant, they cannot rely on the Defendants'

alleged failure to mail them a notice of renewal so as to avoid summary judgment. See id. ("However, the very language of this provision requires the insured to notify the insurance company that it has not received a renewal notice. Nowhere in [the] [p]laintiff's Complaint does it state that [the] [p]laintiff notified the [d]efendant of the failure to receive a renewal notice. Accordingly, [the] [p]laintiff's reliance on this provision to avoid dismissal fails.")

Moreover, the SFIP provides, "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, *et seq.*), and Federal common law." 44 C.F.R. § Pt. 61, App. A(1). Thus, N.Y. Insurance Law § 3425 relied on by the Plaintiffs ha**s** no relevance here. See, e.g., Gunter v. Farmers Ins. Co., 736 F.3d 768, 773 (8th Cir. 2013) (affirming dismissal of state law claims as preempted because "[t]he reference to 'federal common law' in the SFIP has been understood to direct courts to look to 'standard principles of interpreting insurance contracts when resolving questions' about coverage, not to expand available remedies or causes of action."); Wright v. Allstate Ins. Co., 500 F.3d 390, 398 (5th Cir. 2007) ("Our review of the language of the NFIA and the SFIP reveals no express authorization for a policyholder to bring an extra-contractual claim against a WYO insurer."); TAF, L.L.C. v. Hartford Fire Ins. Co., 549 F. Supp. 2d 1282, 1289 (D. Colo. 2008) ("Therefore, I conclude that TAF's bad faith breach claim is a state law tort claim based on the handling of the claim, rather than the procurement of the SFIP. As such, it is preempted by the NFIA.").

Finally, even if the Defendant was required to mail the Plaintiffs a renewal notice within 45 days, the Defendant has offered sufficient evidence to indicate that it did so. On July 19, 2010, which is forty-five days prior to September 2, 2010, the Defendants prepared a notice addressed to the Plaintiffs that informed them that their "flood insurance is about to expire on [September 2, 2010]" and provided them instructions for how to renew the policy. (Holmes Decl, Ex. A.) Moreover, in his declaration, Holmes states that this notice was "automatically generated and sent out on July 19, 2010" "in accordance with [the Defendant's] standard practice and its obligations under the SFIP." (Holmes Decl. at ¶ 7.)

In response, the Plaintiffs offer no evidence in contravention of Holmes's assertion, but rather claim that the Defendant cannot rely on Holmes's declaration because Holmes does not have personal knowledge with respect to whether the notice was mailed to the Plaintiffs. (The Pls.' Mem. of Law at 11–16.) Again, the Court disagrees.

Fed. R. Civ. P. 56(c) requires a party moving for summary judgment to submit supporting affidavits or declarations based on "personal knowledge." Affiants generally have personal knowledge about their own experiences. Larouche v. Webster, 175 F.R.D. 452, 454 (S.D.N.Y. 1996) ("Generally, affiants have personal knowledge to testify about their experiences."). However, affiants "may also testify to the contents of records they have reviewed in their official capacities." Id.; see also Searles v. First Fortis Life Ins. Co., 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000) ("[The affiant's] position with [the defendant] qualified her to review the relevant business materials in an official capacity

14

and make sworn statements based upon those materials. The [c]ourt finds that [the affiant] had personal knowledge of the facts about which she testified.").

Holmes is a "custodian of records" for the Defendant and a "Director" of "Technical Services." (Holmes Decl. at ¶ 2.). Prior to making his declaration, Holmes stated that he "review[ed]" "the documents maintained in the claims files of this matter." (Id. at ¶ 3.) Based on his position and his official review of the Plaintiff's file, the Court concludes that Holmes satisfies the standard for personal knowledge required under Rule 56(c).

The case cited by the Plaintiffs are not to the contrary because in those cases, the parties either failed to submit affidavits attesting to the mailing of the letter or submitted affidavits that did not offer proof of the company's regular mailing procedures. See, e.g., Frankel v. Citicorp Ins. Servs., Inc., 80 A.D.3d 280, 284, 913 N.Y.S.2d 254 (App. Div. 2010) (finding "affidavit of the senior vice-president of the respondents' servicing company was insufficient to demonstrate personal knowledge of actual mailing" because it contained no evidence as to the standard office practice or procedures related to those mailings); Phoenix Ins. Co. v. Tasch, 306 A.D.2d 288, 762 N.Y.S.2d 99 (App. Div. 2003) ("While a party is entitled to a rebuttable presumption of receipt based on proof of regular mailing, <u>the appellant failed to submit sufficient evidence attesting to the mailing of the letter dated October 4, 1999, or to the existence of an office practice geared to ensure the proper addressing or mailing of this letter</u>) (emphasis added). Here, by contrast, the Defendant offers the sworn declaration of Holmes, a custodian of records, stating that the renewal notices were mailed to the Plaintiffs and CitiMortgage "in

15

accordance with its standard practice and its obligations under the SFIP." (Holmes Decl. at ¶ 7.) Thus, the Court finds the Plaintiffs' argument in this respect to be unavailing.

For the reasons discussed above, the Court finds that the Plaintiffs' policy expired on September 2, 2010. Therefore, the Court concludes that, as a matter of law, the Plaintiff was not entitled to coverage for the flood-related damages it incurred on October 29, 2010.

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that (i) the Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 is granted in its entirety; (ii) the Plaintiffs' cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56 is denied; and (iii) the Plaintiffs' claims are dismissed. The clerk of the Court is directed to close this action.

**SO ORDERED.**
Dated: Central Islip, New York
January 17, 2015

                                                  *Arthur D. Spatt*
                                            ARTHUR D. SPATT
                                       United States District Judge